**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| WAGWEAR LLC, a New York company,<br><br>Plaintiff,<br><br>v.<br><br>Emporion Group LLC, a Florida company,<br><br>Defendant. | Case No. 1:25-cv-20267<br><br>**VERIFIED COMPLAINT FOR DESIGN PATENT AND TRADE DRESS INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**REDACTED** |

**VERIFIED COMPLAINT FOR DESIGN PATENT AND TRADE DRESS INFRINGEMENT**

Plaintiff Wagwear, LLC ("Wagwear"), by and through its undersigned counsel, for its Verified Complaint against Defendant Emporion Group LLC ("Emporion"), states and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for design patent infringement under the United States Patent Act, 35 U.S.C. § 271, *et seq.*, and trade dress infringement under the United States Lanham Act, 15 U.S.C. § 1125, *et seq.*, arising from Defendant's acts that are causing substantial and irreparable harm to Wagwear's goodwill, reputation, and business. Wagwear seeks preliminary then permanent injunctive relief, damages, disgorgement of profits, attorneys' fees and costs, and all other available relief in law or equity.

2. Defendant has blatantly copied, manufactured, and sold unauthorized reproductions of Wagwear's distinctive products in direct competition with Wagwear.

3. Defendant has infringed, and continues to infringe, directly and/or indirectly, the United States Patent No. D938,102 (the "Wagwear Patent" or "the '102 Patent") owned by Wagwear. A copy of the Wagwear Patent is attached hereto as **Exhibit A.**

4. Specifically, Defendant has directly and/or indirectly infringed and continues to infringe the Wagwear Patent through the manufacture, use, offering to sale, and/or sale in the United States, and/or the importation into the United States, of infringing pet boots.

5. Defendant has also infringed Plaintiff's trade dress in and to its distinctive and extremely popular dog boots by marketing competing, knock-off dog boots.

6. Wagwear seeks damages and other relief for Defendant's infringement of the Wagwear Patent and Defendant's trade dress infringement.

## THE PARTIES

7. At all relevant times mentioned herein, Wagwear is and has been a New York limited liability company with its principal place of business in New York.

8. On information and belief, at all relevant times mentioned herein, Defendant Emporion is and has been a Florida company with its principal place of business at 2106 NE 124th St. North Miami, Florida.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction is vested in this Court under 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of parties under the Lanham Act, 15 U.S.C. § 1051 et seq., and under the patent laws of the United States, including 35 U.S.C. § 101 et seq.

10. This Court has personal jurisdiction over Defendant because Defendant resides within this Judicial District in North Miami, Florida, and its conduct in North Miami, Florida, including its marketing, display, and sales of infringing products on Amazon.com ("Amazon") from its location in North Miami, Florida, gives rise to the claims asserted in this action.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), § 1391(b)(2) and § 1400 because the actions that give rise to the allegations in this Verified Complaint, namely Defendant's marketing, offering for sale, and sale of products that are infringing upon Wagwear's intellectual property rights, occurred in North Miami, Florida.

## FACTUAL ALLEGATIONS

### A. Wagwear's Patent and its WAGWELLIES Dog Boots

12. Wagwear was founded in 1998 by designer/owner Amy Harlow to offer ultra-modern and fashionable dog accessories. Wagwear's immensely popular dog boots—sold under the brand name WAGWELLIES®—were released in 2021. WAGWELLIES have since become an internet sensation, with hundreds of thousands sold to customers all around the U.S., and in fact, the world. Images of the WAGWELLIES Mojave model are below.




13. Wagwear also offers dog owners a range of other products, including leashes, collars, harnesses, jackets, sweaters, and toys.

14. Wagwear creates original designs for its dog products with their own distinctive style. Substantial time and resources have been invested in developing these products, including the WAGWELLIES.

3

15. Wagwear has gone to great lengths to protect its investment, including by obtaining trademark rights for WAGWELLIES and design patents for the same (U.S. Patent Nos. D938,102 and D917,796).

16. The '102 Patent, titled "Pet Boot," was filed on March 12, 2021, and issued on December 7, 2021. *See* **Exhibit A.** It includes one claim for "The ornamental design for a pet boot, as shown and described" in 5 drawing sheets, which depict the design of a dog boot.

17. Aside from its patent rights, Wagwear's WAGWELLIES design is distinctive, unusual, and has acquired secondary meaning. Their rounded, structured ovoidal base smoothly attaches to a cylindrical top portion. Two elongated U-shaped slits run down either side of the cylindrical top portion. The cylindrical top portion is wrapped around by a strap and bears a logo in the top-front-middle of the boot. The front and sides of the boot are perforated with distinctive regularly spaced circular see-through holes. The bottom of the boot has distinct textured ribbing.

**B. Wagwear Extensively Markets WAGWELLIES**

18. Wagwear markets its distinctive WAGWELLIES on numerous social media sites, such as Facebook, Twitter, Instagram, and TikTok. Wagwear extensively markets the WAGWELLIES on social media to great effect. For example, as of November 7, 2024, Wagwear has over 158,000 followers on Instagram. It markets and sells these boots on its own website, www.wagwear.com. Wagwear also sells its WAGWELLIES at its brick-and-mortar store located in Manhattan.

19. Wagwear has invested heavily in marketing its WAGWELLIES Mojave, with ▇▇▇▇ spent on advertising across platforms such as Google and Meta in 2024 alone.

20. Wagwear also operates a substantial Ambassador program, where social media influencers are given free Wagwear products in exchange for promoting the same. To date,

Wagwear has invested ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in order to promote its products on Instagram, TikTok, and other social media platforms. Below are examples of influencers' posts featuring Wagwear's WAGWELLIES.

a. The Instagram reel posted by @winstonthefrenchiee_ featuring Wagwear's WAGWELLIES received 19.3 million views. The video can be found at https://www.instagram.com/reel/C0_i8KbuqUa/?igsh=MW5jbWp6MHEzaWtwNg%3D%3D.



b. An Instagram reel posted by @goldengirlpacha received 8.5 million views. This video can be found at https://www.instagram.com/reel/Cu8ELUlgzOG/?igsh=MTA4enpqdGxkbDRpNQ%3D%3D.



c. An Instagram post from the handle @it_is_a_pancake_life published on January 14, 2023, garnered over two million likes. This video can be found at https://www.instagram.com/reel/DDfNICRJK-7/?igsh=ZGlkNHd0NzFpN3Ex.



21.     Wagwear's social media posts relating to WAGWELLIES have been viewed millions of times across Instagram and TikTok alone, with more than 20 million impressions on Instagram since May 2022 and more than a million impressions on TikTok since February 2024.

22.     Wagwear's social media advertisements relating to WAGWELLIES are viewed by hundreds of thousands of consumers.

23.     Below are social media posts by Wagwear that have garnered widespread recognition.

a. For example, videos of Wagwear's WAGWELLIES regularly receive tens of thousands of likes on Instagram, as shown by the example below, which was originally published by Wagwear on September 27, 2024. The video can be found at https://www.instagram.com/p/DAbM-DCRsit/?hl=en.



b. A video on the sizing of Wagwear's WAGWELLIES garnered over 825,000 views. This video can be found at https://www.instagram.com/reel/C4_3WjZN8MJ/.



24.     Wagwear's significant investment in marketing and advertising its WAGWELLIES has resulted in significant sales and revenue.

**C.  WAGWELLIES Featured Prominently in Numerous Major News Profiles**

25.     Plaintiff's WAGWELLIES dog shoes have received unsolicited media attention in prominent publications.

26.     For example, *Forbes.com* published an article on July 2, 2024 ranking Wagwear's WAGWELLIES as the "Best Dog Shoes For Hot Pavement For Large Dogs" (https://www.forbes.com/sites/forbes-personal-shopper/article/best-dog-shoes-for-hot-pavement/).  A true and correct copy of relevant portions of the article is attached hereto as **Exhibit B**.

27.     Similarly, *thedodo.com* published an article on June 17, 2022 ranking WAGWELLIES as the "Best summer dog shoes with ventilation"

9

(https://www.thedodo.com/dodowell/dog-shoes-for-summer/).  A true and correct copy of relevant portions of the article is attached hereto as **Exhibit C**.

### D.  Consumers Recognize WAGWELLIES, As Shown in Social Media Comments

28.  Given Wagwear's marketing efforts surrounding WAGWELLIES, conscious efforts to link the product with online trends, and the high sales volume of the product, the relevant consuming public associates the overall appearance of the WAGWELLIES with Wagwear.

29.  As just one example of Plaintiff's highly successful marketing, Plaintiff posted a video to TikTok in December 2023 promoting its WAGWELLIES dog shoes, available at https://www.tiktok.com/@wagwear/video/7313731324680948998?_r=1&_t=8rJFRu4ILvb, and that video has over one million views, nearly 950,000 likes, and nearly 1,500 comments.  True and correct screen captures of numerous other customer comments/interactions from social media are collected and set forth in **Exhibit D**.

30.  Plaintiff's marketing efforts have led to Plaintiff's customers tagging Plaintiffs on both Instagram and TikTok to show their own dogs featured in Plaintiff's WAGWELLIES dog shoes. Customers have tagged Plaintiff's over 18,000 times on social media channels.

31.  Thanks to the distinctive design of Plaintiff's WAGWELLIES dog shoes and Plaintiff's marketing efforts, Plaintiff has sold over 100,000 units of its WAGWELLIES Mojave dog shoes.

32.  Some third parties have intentionally copied Wagwear's WAGWELLIES design. Wagwear has successfully enforced its intellectual property rights against these infringers through cease-and-desist letters and online marketplace take-down requests.  True and correct copies of letters to infringing parties and take-down requests are collected and set forth in **Exhibit E**.

33. Wagwear's trade dress in the WAGWELLIES has acquired distinctiveness thanks to widespread consumer recognition, third-party and media attention, extensive advertising, high sales volume (over 100,000 units sold), and intentional copying, as discussed herein.

### E. Emporion's Infringing Activities

34. Upon information and belief, Emporion is a direct competitor to Wagwear, selling many of the same products including dog boots, jackets, and toys under the brand name "YEPETS." *See* www.yepets.pet.

35. Defendant has been distributing, displaying, marketing, offering for sale, and selling substantially similar copies of Wagwear's WAGWELLIES on, at least, Amazon. Defendant has been marketing its infringing products under the name "Dog Flops." True and correct copies of the Amazon webpage for Emporion's Dog Flops are included in **Exhibit F** and a screenshot is reproduced below.



36. Emporion's Dog Flops misappropriate Wagwear's intellectual property, including the patented design claimed in the '102 Patent, Wagwear's distinctive trade dress in the WAGWELLIES, and generally appear to copy WAGWELLIES.

37. Emporion's infringement of Wagwear's intellectual property rights has and will continue to cause significant damage to Wagwear's market, including lost sales, lost market share, lost reputation, and diminution of brand value. The Emporion products that infringe on Wagwear's rights come in a variety of colors—including, without limitation, Beige, Black, Blue, Fuchsia, Green Grey, Orange, Pink, Purple, and Red.

38. As shown below, the color options Emporion offers its Dog Flops in were directly copied from Wagwear.

**WAGWELLIES Color Options:**



**Dog Flops Color Options:**



39. Defendant's Dog Flops are a blatant copy and knock-off of Wagwear's WAGWELLIES and have the same overall appearance of Wagwear's WAGWELLIES. Below is a comparison of Defendant's Dog Flops and Wagwear's WAGWELLIES.

| Emporion Dog Flops | Wagwear's WAGWELLIES Mojave |
|---|---|



40. As shown, Defendant's products copy several of the original design choices of Wagwear's original design, including without limitation, the logo placement, strap placement, shape of see-through holes, pattern and placement of see-through holes, a generally ovoidal body

13

connected to a cylindrical top portion, slits on either side of the cylindrical top portion, and a textured bottom portion.

41. As a further example of Emporion's infringement, below is a comparison of one of Emporion's Dog Flops, with the claims of the '102 Patent.



42. Consumers who encounter Defendant's Dog Flops are likely to believe that they are associated with, emanating from, or authorized by Wagwear.

43. At no time has Wagwear given Defendant permission, license, or authorization to use the '102 Patent, or to market the Dog Flops.

44. Emporion sells the infringing Dog Flops in direct competition with Wagwear's WAGWELLIES. In some instances, Emporion undercuts Wagwear's prices by selling the infringing Dog Flops on Amazon at prices well below the average price at which Wagwear sells its WAGWELLIES.

45. Defendant Emporion's advertising on Amazon similarly copies Wagwear's advertising. Wagwear's product page on wagwear.com includes instructions on how to measure a dog's paw in order to purchase the correct size of WAGWELLIES. As shown below, Defendant copied the substance of the advertising and the instructions therein.

**Wagwear's Measurement Instructions Graphic:**



**Emporion's Measurement Instructions Graphic:**



15

46. Defendant's willful, deliberate, and malicious acts are causing harm to Wagwear's goodwill, reputation, and business.

## COUNT I

### Patent Infringement Under 35 U.S.C. § 271 of United States Patent No. D938, 102

47. Wagwear re-alleges and incorporates herein by this reference the allegations in Paragraphs 1-46 of this Complaint.

48. Plaintiff owns the '102 Patent and the patent is valid and enforceable.

49. As described herein, Defendants' infringing Dog Flops have been and are infringing one or more claims of the Wagwear Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States products that are covered by one or more claims of the Wagwear Patent.

50. Wagwear is informed and believes and thereupon alleges that the acts and conduct of Defendants complained of herein constitute willful infringement.

51. Defendants' infringement of the Wagwear Patent has caused and will continue to cause Wagwear substantial and irreparable injury, for which Wagwear is entitled to all of the relief provided by 35 U.S.C. §§ 281, 283, 284, and 285, including but not limited to injunctive relief or, should the Court find harm that is compensable by money damages, compensatory damages including lost profits and not less than the amount of a reasonable royalty, interest, costs, enhanced damages, and reasonable attorney's fees, as the Court deems just and appropriate.

## COUNT II

### Trade Dress Infringement Under the Lanham Act § 43, 15 U.S.C. § 1125(a)

52. Wagwear re-alleges and incorporates herein by this reference the allegations in Paragraphs 1-46 of this Complaint.

53. Wagwear has used the distinctive WAGWELLIES trade dress in interstate commerce continuously since 2021. Wagwear has invested substantial time, effort, and financial resources promoting its trade dress in connection with the marketing and sale of its WAGWELLIES in interstate commerce.

54. Wagwear's WAGWELLIES trade dress is nonfunctional and distinctive.

55. Wagwear's WAGWELLIES trade dress is valid through an establishment of secondary meaning in the marketplace because consumers associate that trade dress with a single source of origin.

56. Defendant manufactures, markets, advertises, and sells in interstate commerce using a trade dress that is identical or confusingly similar to Wagwear's WAGWELLIES trade dress.

57. Consumers are likely to mistakenly believe that Defendant's Dog Flops emanate from, are affiliated with, are sponsored by, or are otherwise associated with Plaintiff and its WAGWELLIES dog shoes when in fact they are not.

58. Wagwear did not authorize or license the use of its distinctive trade dress on or in connection with the Emporion Dog Flops. On information and belief, Defendant has manufactured, marketed, advertised, and sold the Dog Flops using Wagwear's WAGWELLIES trade dress with the intention of misleading, deceiving, or confusing consumers as to the origin of their goods and of trading on Wagwear's reputation and goodwill.

**PRAYER FOR RELIEF**

WHEREFORE, Wagwear prays for judgment against Defendant as follows:

A. That the Court enter a judgment finding that Defendant has infringed on one or more claims in the Wagwear Patent under 35 U.S.C. § 271.

B. That the Court enter a judgment finding that Defendant has infringed on Wagwear's trade dress for its WAGWELLIES.

C. That the Court enter a judgment preliminarily and permanently enjoining Defendant and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their investors, partners, parents, subsidiaries, divisions, successors, and assigns, from further acts of infringement of the Wagwear Patent and WAGWELLIES' trade dress during the pendency of this case or after a final judgment in this case.

D. Should the Court find harm that is compensable by money damages, a judgment awarding Wagwear all damages adequate to compensate for the Defendant's infringement of the Wagwear Patent and/or the Defendant's total profits pursuant to 35 U.S.C. § 284, and in no event less than a reasonable royalty for the Defendant's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law.

E. That the Court determine that such infringement was willful and award Wagwear, against the Defendant, treble damages under 35 U.S.C. § 284.

F. That the Court enter an order declaring this an exceptional case and awarding Wagwear its costs and disbursements, including reasonable attorney's fees, under 35 U.S.C. § 285.

G. That the Court award Wagwear pre- and post-judgment interest.

H. That the Court award Wagwear such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Wagwear demands that all claims or causes of action in this Complaint be tried by a jury to the fullest extent possible under the United States Constitution.

Dated: January 17, 2025                                        Respectfully submitted,

                                                               */s/ Christina Mastrucci Lehn*
                                                               Christina Mastrucci Lehn (FBN 113013)
                                                               JAYARAM PLLC
                                                               54 W. 21st Street, Suite 801
                                                               New York, NY 10010
                                                               Telephone: (305) 204-5847
                                                               E-mail: christina@jayaramlaw.com

                                                               *Attorneys for Plaintiff*

## VERIFICATION

I, Amy Harlow, declare as follows:

1. I am the sole owner of Plaintiff Wagwear LLC ("Wagwear"). I have reviewed the foregoing Verified Complaint and verify that the statements made therein are true and correct to the best of my knowledge, information, and belief.

2. I have personal knowledge of Wagwear, Wagwear's activities, and Wagwear's patent and trade dress rights, including those set forth in the foregoing Verified Complaint, and if called to testify, I would testify as to the matters stated therein.

3. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing factual statements in the Verified Complaint about myself, Wagwear, Wagwear's activities, and Wagwear's patent and trade dress rights are true and correct factual statements.

Executed on January 13, 2025 in Woodstock, New York.

_____
Amy Harlow